UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re:

   Robert D. Manning,                            Bankruptcy Case No. 20-20482-PRW
                                                Chapter 13

                          Debtor.

_____

## DECISION AND ORDER
## LIFTING AUTOMATIC STAY

PAUL R. WARREN, U.S.B.J.

      Robert Manning filed this Chapter 13 case for the primary—if not, sole—purpose of stopping the foreclosure sale of four modest condominiums in Tavares, Florida. Lakeview Condominium, Inc. promptly filed a motion requesting that the automatic stay be lifted, to permit the foreclosure sale to be conducted. The foreclosure action was brought by Lakeview against Mr. Manning to foreclose liens for unpaid assessments, as permitted by Florida law. Mr. Manning opposes the motion, claiming that retention of the condominiums—so that they might be leased to third parties to generate income—is the lynchpin to his Chapter 13 plan.

      For the reasons that follow, the motion of Lakeview requesting relief from the automatic stay, under 11 U.S.C. § 362(d)(2), is **GRANTED**.

## I.

## JURISDICTION

      The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## II.

## FACTS

The history of the relationship between Lakeview and Mr. Manning has been marked by acrimony, lawsuits, and countersuits, occupying the attention of the Florida state courts from 2017 until 2020. In July 2017, Lakeview started an action to foreclose liens, arising under Florida law, for unpaid assessments on the four condominium Units owned by Mr. Manning. (ECF No. 33-4 ¶ 32). It appears that the unpaid assessments—covering all four Units—totaled approximately $31,700. (ECF No. 54 ¶ 4). Nearly two years later, following extensive discovery and motion practice, the Florida court conducted a three-day trial on the foreclosure action and the many counterclaims asserted by Mr. Manning. (ECF No. 33-4 at 7). A "partial final judgment" was granted in favor of Lakeview and against Mr. Manning on July 19, 2019. (*Id.*). The Florida court granted Lakeview a judgment of foreclosure against all four of Mr. Manning's condominium Units, dismissed all of Mr. Manning's counterclaims against Lakeview, and reserved jurisdiction to calculate the amount of foreclosure fees and costs—including assessments, interest, late fees, costs and attorneys' fees—for the period from February 1, 2016 through June 5, 2019. (*Id.* at 19).

A further evidentiary hearing was held by the Florida court, after which the court awarded Lakeview attorneys' fees of $180,943.00, costs of $20,868.46 and past-due condominium assessments, interest and late charges of $31,777.72. (*Id.* ¶¶ 4-9). The trial court divided the total judgment amount equally among the four condominium Units, in the amount of $58,397.30 per-Unit. (*Id.* at 23-24). The court confirmed that, under Florida law, Lakeview held a lien in that amount against each Unit, and the Court authorized Lakeview to sell the Units at foreclosure. (*Id.* at 24-25). The final judgment of foreclosure was entered on May 1, 2020.

2

On June 29, 2020, Mr. Manning filed this Chapter 13 case to stop the foreclosure sale of the condominium Units. (ECF No. 1). On July 21, 2020, Lakeview filed its motion seeking stay relief under both § 362(d)(1) and § 362(d)(2) of the Code. (ECF No. 33). In its motion, Lakeview asserts, as cause to lift the stay under § 362(d)(1), that: Mr. Manning has not insured the Units for several years, the Units are and have been vacant for several years, three of the Units are and have been without utilities for several years due to the filing of a utility lien by the City of Tavares, three of the Units are facing tax foreclosure that imperil Lakeview's liens, and that none of the Units are habitable in their present condition. (*Id.* ¶¶ 15-18). In his reply to the motion, Mr. Manning does not dispute most of those allegations—although he claims to have insured the Units recently. (*See* ECF No. 54).

In the alternative, Lakeview requests that the stay be terminated under § 362(d)(2), asserting that Mr. Manning has no equity in any of the Units and that the Units are not necessary to an effective reorganization that is in prospect. (ECF No. 33-2 at 5). In its original form, the motion did not provide a clear and concise analysis of the information necessary for the Court to conduct an equity analysis. A Case Management Order was issued by the Court, requesting that Lakeview make a supplemental submission, detailing the equity analysis for each condominium Unit, individually. (ECF No. 59). Lakeview filed a supplemental submission, providing an equity analysis on a Unit-by-Unit basis, as requested.[1] (ECF No. 65). It is beyond question that Mr. Manning has no equity in any of the four condominium Units, based on the following findings of fact:

---

[1]     The churlish tone of counsel's supplemental submission is unwelcome, disrespectful and unbecoming. The Court expects counsel to exercise restraint in future submissions.

## Unit 212, 1100 East Caroline Street, Tavares, FL

| | |
|---|---|
| Fair Market Value[2] | $88,500 (ECF No. 54-1) |
| *Minus Liens* | |
| Delinquent Property Taxes | ($3,401.13) |
| Lakeview Lien | ($59,331.51) |
| Cymerman Lien | ($182,757.00) |
| IRS Tax Lien[3] | (74,757.41) |
| Equity = | ($231,747.05) |

## Unit 216, 1100 East Caroline Street, Tavares, FL

| | |
|---|---|
| Fair Market Value | $50,000 |
| *Minus Liens* | |
| Delinquent Property Taxes | ($2,827.24) |
| Utility Liens | ($3,497.64) |
| Lakeview Lien | ($59,331.51) |
| Cymerman Lien | ($182,757.00) |
| IRS Tax Lien | ($74,757.41) |
| Equity = | ($273,170.80) |

---

[2]    The Court will utilize Mr. Manning's valuations in deciding this motion.  It is unnecessary (and does not affect the outcome) to consider the tax assessment valuations.

[3]    In its supplemental submission, Lakeview spends a considerable amount of time addressing "the Court's concern with an IRS federal tax lien and operation of 26 U.S.C. § 6321." (ECF No. 65 n.4).  The IRS tax lien was not mentioned in the initial submission by Lakeview.  Counsel incorrectly assumed that the Court was concerned about the relative *priority* of the IRS federal tax lien.  Of course, the filing of a "notice of federal tax lien" is necessary to establish priority over a subsequent lienor or purchaser—a proposition so basic that it needs no mention.  However, while the IRS tax lien may be last-in-line, it may nonetheless be in the line.  A proper equity analysis, under § 362(g)(1) of the Code, should include *all liens*, regardless of priority.  *See In re Indian Palms Assocs.*, 61 F.3d 197, 207-09 (3d Cir. 1995).

4

## Unit 217, 1100 East Caroline Street, Taveres, FL

| | |
|---|---|
| Fair Market Value | $63,000 |
| *Minus Liens* | |
| Delinquent Property Taxes | ($1,779.86) |
| Utility Liens | ($461.19) |
| First Mortgage[4] | ($59,999.55) |
| Lakeview Lien | ($59,331.51) |
| Cymerman Lien | ($182,757.00) |
| IRS Tax Lien | ($74,757.41) |
| Equity = | ($316,086.52) |

## Unit 218, 1100 East Caroline Street, Tavares, FL

| | |
|---|---|
| Fair Market Value | $65,000 |
| *Minus Liens* | |
| Delinquent Property Taxes | ($2,937.40) |
| Utility Liens | ($1,764.19) |
| Lakeview Lien | ($59,331.41) |
| Cymerman Lien | ($182,757.00) |
| IRS Tax Lien | ($74,757.41) |
| Equity = | ($256,547.41) |

---

[4]  Neither the mortgagee, Wilmington Savings Fund Society, nor its successor, ATLANTICA LLC, appear to be listed by Mr. Manning in the petition, schedules, plan, or matrix. The foreclosure action by Wilmington does not appear in the Statement of Financial Affairs.

In his opposition to the lift stay motion, Mr. Manning indicates that it is his intention to either rent or sell the four Units. (ECF No. 54 ¶ 1). And, while Mr. Manning has obtained a realtor's valuation for the four Units (combined) of $266,500—an amount that exceeds Lakeview's valuation by $80,265—no mention is made of the liens that burden each Unit, in cumulative amounts that far exceed Mr. Manning's optimistic valuations. And, finally and critically to the outcome of this motion, Mr. Manning does not dispute the fact that, under the terms of the Condominium Declaration, the express approval of Lakeview is required before any of the Units can be rented to third parties. (ECF No. 33 ¶ 21). Lakeview has announced its intention to disapprove of an attempt by Mr. Manning to rent any of the Units to a third party. (*Id.* ¶¶ 21-22; ECF No. 65 ¶ 5).

### III.

### DISCUSSION

Section 362(d) of the Bankruptcy Code provides two alternative avenues by which a creditor can seek relief from the automatic stay. Under § 362(d)(1), relief can be requested "for cause," including the lack of adequate protection of the creditor's interest in the property. 11 U.S.C. § 362(d)(1). Alternatively, and additionally, relief can be requested under § 362(d)(2) if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). The party seeking stay relief bears the burden of proof on the issue of the Debtor's equity in the property. 11 U.S.C. § 362(g)(1). The party opposing stay relief has the burden of proof on all other issues. 11 U.S.C. § 362(g)(2).

If the Court finds that the movant has established grounds for stay relief under either § 362(d)(1) or § 362(d)(2), the Court must lift the stay. 11 U.S.C. § 362(d). There is, however,

no requirement that the Court address the issue of adequate protection, under § 362(d)(1), if the Court finds that grounds for termination of the stay have been demonstrated under § 362(d)(2). *See In re de Kleinman*, 156 B.R. 131, 136 (Bankr. S.D.N.Y. 1993). Here, because the Court finds that Mr. Manning has no equity in any of the condominium Units and that the Units are not necessary for an effective reorganization that has a realistic possibility of success, the Court must lift the stay under § 362(d)(2). Consequently, the Court need not address the issue of whether Lakeview lacks adequate protection of its interest in the Units under § 362(d)(1).

## A. <u>Mr. Manning Lacks Equity in Any of the Units</u>

To determine whether Mr. Manning has equity in any of the Units, the Court must determine the fair market value of the property, from which the amount of all liens—including those senior and junior to the movant's lien—are subtracted. *See In re Indian Palms Assocs.*, 61 F.3d 197, 207-09 (3d Cir. 1995); *In re de Kleinman*, 156 B.R. at 136. The Court has determined the fair market value of each Unit, as set forth above, based on the valuation analysis supplied by Mr. Manning's realtor.[5] While those valuations are slightly greater than those suggested by Lakeview, the staggering amount of liens burdening each Unit results in significant negative equity in each Unit, which the Court finds to be:

---

[5] Lakeview has repeatedly urged the Court to accept the Lake County Assessor's valuation. The Court takes this opportunity to remind the Bar that tax assessment valuations should not be relied upon by movants seeking stay relief in this Court, unless the movant also provides information detailing (1) the date the assessment was performed, (2) the name and professional qualifications of the person that performed the assessment, and (3) the specific methodology utilized to arrive at the assessed valuation—including comparables relied on by the assessor. Absent such information, a tax assessment is not a reliable indication of the fair market value of property. For the same reason, a Zillow valuation is also not acceptable evidence of the value of real property to support a lift stay motion in this Court.

7

| Unit 212 | $231,747.05 negative equity |
| Unit 216 | $273,170.80 negative equity |
| Unit 217 | $316,086.52 negative equity |
| Unit 218 | $256,547.41 negative equity |

Mr. Manning has not disputed any of the liens alleged to encumber each Unit. The Court finds that Lakeview has satisfied its burden of proof, under § 362(g)(1), on the issue of Mr. Manning's lack of equity in each Unit. The first prong under § 362(d)(2)(A) has been met by Lakeview. The burden of proof on all other issues shifts to Mr. Manning, under § 362(g)(2).

## B. Mr. Manning Has Failed to Prove That Any of the Units are Necessary to an Effective Reorganization

In order to defeat Lakeview's request for stay relief, Mr. Manning must prove that each Unit is necessary for an effective reorganization. 11 U.S.C. § 362(d)(2)(B). The Supreme Court has held that the debtor bears the burden of proving that there is "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988).

Asking the Court to look only at the fair market value of the Units collectively—$266,500—while completely ignoring the liens, Mr. Manning asserts that the Units have value to the estate. (ECF No. 54 ¶ 1). Selling the Units would not generate even one dollar of value for the Estate. Instead, Mr. Manning proposes to lease the Units to third parties for a total of $2,800 per month (gross), and to pay the net income from those rentals into his Chapter 13 plan—without specifying what the net income might be. (ECF No. 54-1 ¶ 4 & ECF No. 48 ¶ 2.4(1)). But, critically to this motion, Mr. Manning fails to address the fact that, under the Condominium

8

Declaration, Mr. Manning cannot rent the Units without the permission of Lakeview. The Declaration expressly states, "No unit owner may dispose of a unit or any interest in a unit by a lease without approval of the Association except to his or her spouse, or another member of the Association." (ECF No. 66-7 at 17). And, Lakeview has announced its firm intention to disapprove any request by Mr. Manning to rent the Units to third parties because of his past abuses. (ECF No. 33 ¶¶ 21-22). Because a fundamental foundation of Mr. Manning's Chapter 13 plan is to fund the plan from income generated from leasing the Units to third parties, which cannot be accomplished without Lakeview's permission—which Lakeview will not give—Mr. Manning has failed to carry his burden of proving that the condominium Units are necessary to an effective reorganization plan, that has a realistic possibility of success, within a reasonable period of time. Simply ignoring Lakeview's stated intention to withhold its consent to the leasing of the Units, as is its right under the Condominium Declaration, falls far short of the burden of proof imposed on Mr. Manning under § 362(g)(2) of the Code.

The Court holds that Lakeview has satisfied its burden of proof under § 362(d)(2)(A) and § 362(g)(1) of the Code. The Court further holds that Mr. Manning has failed to carry his burden of proof under § 362(d)(2)(B) and § 362(g)(2). Therefore, the automatic stay must be—and is—terminated as to each of the four condominium Units, under 11 U.S.C. § 362(d)(2).

## C.  Lakeview's Second Request for Judicial Notice

Lakeview has requested that the Court take judicial notice, under Rule 201(c) FRE, of nine categories of records and documents. (ECF No. 66). Lakeview asserts that the Court "must" take judicial notice, as requested, because it has provided all necessary information. (*Id.* at 3). Lakeview has not, however, specifically identified a single *adjudicative fact or facts*, contained

within those records or documents, for which it requests judicial notice.  Specifically, Lakeview requests that the Court take judicial notice of the following:

(i)     All records and documents filed within the present bankruptcy case.  Case No. 62:20-bk-20482-PRW;

(ii)    Partial Final Judgment of Foreclosure, certified and recorded on January 9, 2020, in Official Records Book 5404, Page 4, et seq., of the Public Records of Lake County, Florida;

(iii)   Final Judgment of Foreclosure, certified and recorded on June 1, 2020, in Official Records Book 5478, Page 2160, et seq., of the Public Records of Lake County Florida;

(iv)    All records and documents filed within the state court foreclosure litigation, See, *The Lakeview Condominium, Inc. v. Robert Manning,* et al; Case No.: 2017-CA-001311, Circuit Court in and for Lake County, Florida;

(v)     Records of the Lake County Property Appraiser, https://lakecopropappr.com/; demonstrating the current fair market valuation of the four (4) condominium Units;

(vi)    Records of the Lake County Tax Collector's Office, https://lake.county-taxes.com/public; demonstrating the current taxes owed on the four (4) condominium Units;

(vii)   City of Tavares Utility Liens on Units 216, 217, and 218, recorded in the Official Records of Lake County, Florida;

(viii)  All records and documents filed within the state court foreclosure litigation of primary mortgage foreclosure against Unit 217; See, *Wilmington Savings Fund Society… v. Robert Manning*, et al; Case No. 2018-CA-002584, Circuit Court in and for Lake County, Florida;

(ix)    The Lakeview Condominium, Inc.'s "Declaration of Condominium Restrictions, Reservations, Covenants, Conditions and Easements", recorded at Official Records Book 533, Pg. 565, in the Public Records of Lake County, Florida.

(ECF No. 66 at 2-3).

Central to Rule 201 FRE is the notion that federal courts take judicial notice of facts, not documents.  As the Rule unambiguously provides, Rule 201 "governs judicial notice of an

adjudicative fact only." Fed. R. Evid. 201(a). Regardless of the source of the records, and regardless of the extent of authentication offered, judicial notice under Rule 201 is limited to adjudicative facts, not documents. *See, e.g.*, *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. S.C. 2008) (quoting *In re Earl*, 140 B.R. 728 n.2 (Bankr. N.D. Ind. 1992) ("Courts realize that there is a very crucial distinction between taking judicial notice of the fact that an entity has filed a document in the case, or in a related case, on a given date, i.e., the existence thereof, and the taking of judicial notice of the truth or falsity [of the] contents of any such document for the purposes of making a finding of fact.") (internal quotation marks omitted). "In effect, when presented with a document to be judicially noticed, the document is just supporting information for the 'fact' sought to be noticed: that a particular event occurred." *Tate v. Univ. Med. Ctr. of S. Nev.*, No. 2:09-cv-01748-JAD-NJK, 2016 U.S. Dist. LEXIS 166603, at *20 (D. Nev. Dec. 2, 2016).

The Court could simply deny Lakeview's Second Request for Judicial Notice because it fails to identify the specific "adjudicative fact," for which it requests judicial notice, contained in each document or record. The Court will, however, address each request individually.

(i)     All records and documents filed within the present bankruptcy case. Case No. 62:20-bk-20482-PRW

The Court will take judicial notice of the docket and the existence of documents filed with the Court. The truth of the statements in the pleadings and documents is not a matter for judicial notice.

(ii)     Partial Final Judgment of Foreclosure, certified and recorded on January 9, 2020, in Official Records Book 5404, Page 4, et seq., of the Public Records of Lake County, Florida

The Court will take judicial notice of the existence of this document, but the findings of fact or conclusions of law contained in the document is not a matter for judicial notice. The Debtor has not disputed the existence of this document.

(iii)    Final Judgment of Foreclosure, certified and recorded on June 1, 2020, in Official Records Book 5478, Page 2160, et seq., of the Public Records of Lake County Florida

The Court will take judicial notice of the existence of this document and the dollar amount of the resulting liens, but the findings of fact and conclusions of law contained in the document is not a matter for judicial notice. The Debtor has not disputed the existence of this document.

(iv)    All records and documents filed within the state court foreclosure litigation, See, *The Lakeview Condominium, Inc. v. Robert Manning,* et al; Case No.: 2017-CA-001311, Circuit Court in and for Lake County, Florida

The Court will take judicial notice of the existence of the foreclosure action in Lake County, Florida. The Court declines to take judicial notice of the contents of the records and documents filed in the Florida foreclosure litigation, if offered for the truth of the statements contained therein. Lakeview has submitted a total of five pages of docket sheets from the *The Lakeview Condominium, Inc. v. Manning* Florida foreclosure action, containing hundreds of entries. But, Lakeview has not specified the adjudicative facts for which it seeks judicial notice, or the specific location of such facts, within the hundreds of documents and records reflected on the docket.

(v)    Records of the Lake County Property Appraiser, https://lakecopropappr.com/; demonstrating the current fair market valuation of the four (4) condominium Units

As framed by Lakeview, judicial notice of these records is sought to establish the truth of the fair market valuations contained in the County's records. The Court has ruled that, absent sufficient information to demonstrate the reliability of a tax assessment as proof of value, a tax

assessment (standing alone) is not persuasive evidence of the value of real property. Here, the differences in the values offered by Mr. Manning and those offered by Lakeview are inconsequential, having no impact on the outcome. The Court deems this request for judicial notice as moot.

> (vi)     Records of the Lake County Tax Collector's Office, https://lake.county-taxes.com/public; demonstrating the current taxes owed on the four (4) condominium Units

Lakeview has provided the Court, in the form of an attorney's affirmation, the amount of the unpaid taxes on each Unit. Mr. Manning has not disputed that past due taxes are owed or the amount of those taxes. The Court will take judicial notice of the amount of delinquent taxes owed by Mr. Manning for each Unit, as set out in Lakeview's motion, but not in the records of the Lake County Tax Collector.

> (vii)    City of Tavares Utility Liens on Units 216, 217, and 218, recorded in the Official Records of Lake County, Florida

Lakeview has provided the Court, in the form of an attorney's affirmation, the amount of the unpaid utility liens on each Unit. Mr. Manning has not disputed that past due utilities are owed or the amount of those utility liens. The Court will take judicial notice of the amount of delinquent utility liens owed by Mr. Manning for each Unit, as set out in Lakeview's motion, but not in the records of Lake County.

> (viii)   All records and documents filed within the state court foreclosure litigation of primary mortgage foreclosure against Unit 217; See, *Wilmington Savings Fund Society... v. Robert Manning*, et al; Case No. 2018-CA-002584, Circuit Court in and for Lake County, Florida

The Court will take judicial notice of the existence of a mortgage foreclosure action in Lake County, Florida, concerning Unit 217. The Court declines to take judicial notice of the contents of the records and documents filed in the Florida foreclosure litigation, if offered for the

truth of the statements contained therein.  Lakeview has submitted a total of two pages of docket sheets from the *Wilmington Savings Fund Society . . . v. Manning* Florida foreclosure action, containing dozens of entries.  But, Lakeview has not specified the adjudicative facts for which it seeks judicial notice within the dozens of documents and records reflected on the docket.

    (ix)    The Lakeview Condominium, Inc.'s "Declaration of Condominium Restrictions, Reservations, Covenants, Conditions and Easements", recorded at Official Records Book 533, Pg. 565, in the Public Records of Lake County, Florida

The Court will take judicial notice of the existence of this document and its date of filing with the Lake County Clerk.  The Court will take judicial notice of the fact that Lakeview has the right to refuse to approve the lease of any Unit to a third party by an owner.  (ECF No. 66-7 ¶ 13(A)(2)).  Mr. Manning has not disputed or challenged that fact.

Lakeview further requests that judicial notice of the above-requested items be taken "for all matters" pertaining to Lakeview and the Debtor in this case, including the motion to lift stay "and all related affidavits and supporting documents, determinations of value, determinations of dischargeability in any adversary proceeding, matters related to [Lakeview's] proofs of claim, and any subsequent objections or disputes as to the Debtor's Chapter 13 Plan, as amended."  (ECF No. 66 at 4-5).  To the extent the Court takes judicial notice as detailed above, it is for the sole and exclusive purpose of deciding this motion.  The wide-ranging applicability of judicial notice to other contested matters in this case, as demanded by Lakeview, is **DENIED**.

14

**IV.**

**CONCLUSION**

For the reasons stated above, the motion of Lakeview to terminate the automatic stay, under

11 U.S.C. § 362(d)(2) is **GRANTED**. Lakeview's Second Request for Judicial Notice is

**GRANTED, in part,** and **DENIED, in part,** as set forth above.

**IT IS SO ORDERED.**

DATED: August 27, 2020         _____/s/_____
      Rochester, New York       HON. PAUL R. WARREN
                        United States Bankruptcy Judge